# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

ADAGIO INVESTMENTS HOLDING LTD.,)
     333 Waterfront Drive, Wickhams Cay,
     Road Town, Tortola, British Virgin Islands,
BADEN HOLDINGS LTD.,
     Saffrey Square, Suite 205
     Banu Lane, Nassau, Bahamas,
BELFAST LINK, S.A.,
     Calle Juncal 1305
     Montevideo, Uruguay,
BRANDAN INVESTMENT S.A.,
     Calle Juncal 1327 (Suite 1801)
     Montevideo, Uruguay,
CHALONE LIMITED,
     Tropic Isle Bldg., Wickhams Cay,
     Road Town, Tortola, British Virgin Islands,
DAIRLAND S.A. (EUROPA),
     Plaza Independencia 822,
     Montevideo, Uruguay,
DARTLEY BANK & TRUST LTD.,
     West Bay Street, Cable Beach,
     PO Box C1313319, Nassau, Bahamas,
DARTLEY HOLDINGS INC.,
     Calle Aquilino de la Guardia, #8,
     Panama City, Panama,
DERABOIX S.A. (DIGITAL),
     Plaza Independencia 822/801
     Montevideo, Uruguay,
FELKER S.A.,
     Calle Juncal 1305,
     Montevideo, Uruguay,
INTERCONTINENTAL BANK (URUGUAY) SAME,
     Colonia No. 999, 11100
     Montevideo, Uruguay,
KIESSER INVESTMENT S.A.,
     Plaza Independencia 811
     Montevideo, Uruguay,
MAXIMUS S.A.,
     Misiones 1472
     Montevideo, Uruguay
MEGA SECURITIES LTD.,
     PO Box 3026, Bolem House
     King and George Streets
     Nassau, Bahamas,

CASE NUMBER 1:02CV02550

JUDGE: Ellen Segal Huvelle

DECK TYPE: General Civil

DATE STAMP: 12/31/2002

237055.0

METROPOLIS CASA DE CAMBIOS, S.A.,
     Av. Corrientes 2557, 1046
     Ciudad de Buenos Aires, Argentina,
NORPORT LTD.,
     Tropic Isle Bldg,. PO Box 438,
     Road Town, Tortola, British Virgin Islands,
OURINVEST CAPITAL INC.,
     PO Box 71, The Craigmuir Chambers
     Road Town, Tortola, British Virgin Islands,
RAINTREE LTD.,
     Rua Bahia 720, Higienopolis,
     Sao Paulo 01244-00, Brazil,
TAFLEX CORPORATION S.A.,
     Juan Carlos Gomez 1348,
     Montevideo, Uruguay,
TRANSPACIFIC S.A.,
     Augustinas 1028,
     Santiago, Chile, and
VENTON MANAGEMENT CORP.,
     The Lake Building, Wickhams Cay
     Road Town, Tortola, British Virgin Islands,

                          Plaintiffs,

      -- against --

FEDERAL DEPOSIT INSURANCE CORPORATION,
in its corporate capacity and as receiver of
Connecticut Bank of Commerce, 550 17th Street NW,
Washington, D.C. 20429,

                          Defendant.

---

## **COMPLAINT**

Plaintiffs, by their attorneys, for their complaint allege as follows:

1.     Plaintiffs were each depositors of Connecticut Bank of Commerce,  a failed bank.  Defendant Federal Deposit Insurance Corporation in administering the receivership estate of the closed bank unlawfully depleted plaintiffs' deposit accounts of millions of dollars,

thereby drastically reducing plaintiffs' likely recovery upon the liquidation of the bank. These actions, which benefited defendant at plaintiffs' expense, will effectively deprive plaintiffs of the protections of the Federal Deposit Insurance Act to which they are entitled. Plaintiffs, thus, bring this action to recover the value of the deposits taken from them in violation of law.

### Jurisdiction and Venue

2.    This action arises under the Constitution and laws of the United States, including, without limitation, the Federal Deposit Insurance Act, as amended, 12 U.S.C. § 1811, *et seq.,* the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.,* the Fifth Amendment to the United States Constitution and the common law. This Court has jurisdiction over the subject matter of this action pursuant to 12 U.S.C. §§ 1821(d)(6) and 1821(f)(4), and 28 U.S.C. § 1331.

3.    Venue is proper in this Court under 12 U.S.C. § 1821(d)(6).

### The Parties

4.    Each plaintiff is incorporated or otherwise organized under the laws of a jurisdiction outside the United States, and conducts its business principally outside of the United States.  As more fully set forth below, each plaintiff was a depositor of the Connecticut Bank of Commerce.

5.    Defendant Federal Deposit Insurance Corporation ("FDIC") is the agency charged by law with, among other duties, administering the Federal Deposit Insurance Act and the federal bank deposit insurance system. The FDIC is sued in its corporate capacity ("FDIC-Corporate") as the insurer of bank deposits and the supervisor of the receivership activities of the FDIC, and in its capacity as the Receiver of the Connecticut Bank of Commerce ("FDIC-Receiver").

**Facts Common to All Claims**

6.      On and before June 26, 2002, plaintiffs each maintained one or more commercial (checking) accounts at Connecticut Bank of Commerce ("CBC"), a bank chartered by the State of Connecticut with branches in Stamford, CT and New York, NY.

7.      Prior to June 26, 2002, each plaintiff had authorized CBC to invest a portion of its deposit account after the close of a banking day in an "International Banking Facility" ("IBF").   Despite its name, the IBF was not a separate entity but rather was a product or service offered by CBC to eligible depositors to enable them to earn interest on deposit accounts.

8.      The IBF worked as follows: Each night, after the close of a banking day, a portion of each plaintiff's account was transferred or "swept" into CBC's IBF, that is, monies were debited from plaintiff's accounts and an equivalent amount was credited on CBC's books and ledgers to CBC's IBF account. CBC invested the funds debited from all the plaintiffs and other IBF customers in overnight or very short-term investments. The proceeds of those investments were received back by CBC before the commencement of the next banking day. Upon receipt, the funds were initially credited to CBC's IBF ledger account and then immediately debited from that ledger and credited to the individual plaintiffs' deposit accounts, together with each plaintiff's *pro rata* share of the interest earned on the funds overnight.

9.      Upon an *ex parte* application made by the Connecticut Commissioner of Banking on June 26, 2002 to the Superior Court of the State of Connecticut alleging that the bank was insolvent, the FDIC was appointed as Receiver of CBC.

10.      At approximately 4:39 pm on June 26, 2002, the FDIC accepted the appointment, physically and legally assumed control over CBC's accounts and operations, and closed the bank.

4

11.     The closing of the bank means just that. - the bank ceases banking activities.  Under governing law and publicly available FDIC policy statements, the FDIC as Receiver is limited to completing transactions then in process and is not to carry on any further banking business.

12.     In administering the CBC receivership estate after the bank's closing on the afternoon of June 26, 2002, however, the FDIC took certain actions and failed to take others, as more fully described below, which in violation of governing law resulted in depriving plaintiffs of the protections of the federal bank deposit system while providing substantial benefit to the FDIC itself.

**One-Sided Only Post-Closing Continuation of the IBF**

13.     At approximately 10:30 pm on June 26, 2002, some six hours after the FDIC had closed CBC, FDIC-Receiver directed that a significant portion of each plaintiff's account be debited ("swept") from each plaintiffs' deposit account and credited on the closed bank's ledger to the closed bank's IBF account ledger, as if the bank had not been closed.

14.     Upon information and belief: the FDIC-Receiver then invested the funds debited from plaintiffs' (and others') accounts in overnight investments, as if CBC (including its IBF account) were still an operating bank. The monies were received back, with interest, by the receivership estate the next morning before the commencement of the June 27 th banking day and were credited to the bank's IBF ledger account.

15.     Despite its decision to carry out the IBF sweeps from plaintiffs' (and other IBF customers') accounts on June 26th as if the bank had not closed and to invest those funds overnight, FDIC-Receiver did not on June 27th, or at any time thereafter, credit back to any plaintiff (or any other IBF customer) any of the funds taken from their accounts or any of the

interest earned from the overnight investment of those funds received by the receivership estate

before the start of the business day on June 27th.  The reason subsequently given by defendant for

refusing to return the debited funds to plaintiffs was that the bank had closed the day before, on

June 26th

16.     The effect of the FDIC-Receiver's one-sided only continuation of the IBF

(despite the closing of the bank, including the IBF) was to deplete the deposit account of each

plaintiff and transform what was, at the time of the closing of CBC, a deposit liability for the

benefit of the individual deposit holder into a general asset of the receivership for benefit of

FDIC-Receiver, FDIC-Corporate and all depositors of CBC generally.

17.     Each plaintiffs status as a "depositor" 'was fixed as of the time of the

closing of CBC by the FDIC. Subsequent to the closing, FDIC-Receiver determined that each

plaintiff was in fact a depositor, paid each plaintiff its insured amount (generally $100,000 per

depositor) and issued Receivership Certificates for the excess,, uninsured amounts in each deposit

account.

18.     The Receivership Certificates issued to plaintiffs, however, did not equal

the excess (uninsured) balances in each plaintiffs account at the time of the closing of the bank

or at the close of the banking day on June 26, 2002, because they did not include the amount of

the "IBF" funds debited from each account after the bank had been closed. Instead of having the

status of "uninsured depositors" for the full amount of their accounts in excess of the insured

amount, each plaintiffs deposit amount was reduced by the post-closing "sweep" and each

plaintiff became a "general creditor" of FDIC-Receiver for the entire amount of its debited "IBF"

funds.

19.     Under the Federal Deposit Insurance Act, as amended, after the payment

of the insured amount, depositors' uninsured (or excess) deposit liabilities share with FDIC-Corporate the highest priorities for repayment upon the liquidation of the assets and business of the closed bank. As a result, in recent years, uninsured (excess) depositors of closed banks have received as much as 90 to 95% of their uninsured deposit amounts. In fact, FDIC-Receiver has already distributed to uninsured depositors of CBC more than. 42% of their "excess" deposit amounts.

20.     By contrast, general creditors have a much lower priority of repayment. In recent years, general creditors have received *zero* distributions or payments on their claims.

21.     Thus, the FDIC's conversion of plaintiffs' deposit accounts into general creditor claims will result in the plaintiffs ultimately receiving *none* of the monies debited from their accounts after the closing of CBC on June 26th

22.     Upon information and belief, FDIC-Corporate approved and directed the actions taken by FDIC-Receiver with regard to the plaintiffs' accounts and the one-sided only continuation of CBC's IBF. The transformation of plaintiffs' funds from "deposit liabilities" into "general assets" of the receivership estate greatly benefited the FDIC in both its receivership and corporate capacities.

23.     Under the Federal Deposit Insurance Act, general assets of a closed bank are used, upon liquidation, to pay the FDIC for the costs of administering the receivership estate, to reimburse the deposit insurance system (that is, FDIC-Corporate) for the insured amounts paid depositors, to pay interest to FDIC-Corporate for the loan of funds used to pay insured and uninsured (excess) deposit amounts during the course of administering the receivership estate, to pay any other related expenses of the FDIC, and then to pay distributions to all uninsured depositors *pro rata.*  Only after the FDIC has been fully paid and all depositors have been re-paid

their uninsured (excess) deposits are general creditors entitled to be paid on their claims.

     24.    In recent years, no monies have been left from the liquidation of failed banks to pay any general creditors. Upon information and belief, none is expected to be paid to general creditors of CBC either.

     25.    The amount debited each plaintiff's deposit account after the close of business on June 26th and never returned is as follows:

| | | |
|---|---|---|
| a. | Adagio Investments Holding Ltd. | $ 200,000.00 |
| b. | Baden Holdings Ltd. | 550,000.00 |
| c. | Belfast Link, S.A. | 1,375,000.00 |
| d. | Brandan Investment S.A. | 300,000.00 |
| e. | Chalone Limited | 1,050,000.00 |
| f. | Dairland S.A. (Europa) | 800,000.00 |
| g. | Dartley Bank & Trust Ltd. | 825,000.00 |
| h. | Dartley Holdings Inc. | 1,050,000.00 |
| i. | Deraboix S.A. (Digital) | 250,000.00 |
| j. | Felker S.A. | 1,075,000.00 |
| k. | Intercontinental Bank (Uruguay) Safie | 500,000.00 |
| l. | Kiesser Investment S.A. | 1,800,000.00 |
| m. | Maximus S.A. | 1,150,000.00 |
| n. | Mega Securities Ltd. | 700,500.00 |
| o. | Metropolis Casa de Cambios, S.A. | 125,000.00 |
| p. | Norport Ltd. | 1,325,000.00 |
| q. | Ourinvest Capital Inc. | 300,000.00 |

| r. | Raintree Ltd. | 325,000.00 |
| s. | Taflex Corporation S.A. | 975,000.00 |
| t. | Transpacific S.A. | 200,000.00 |
| u. | Venton Management Corp. | 1,,525,000.00 |

26.     Upon information and belief, the total amount taken from the deposit accounts of plaintiffs and others after the bank closed on June 26th and transformed by the FDIC into general assets of the receivership estate through the mechanism of the one-sided post-closing continuation of the IBF totaled approximately $22 million dollars.

27.     Plaintiffs duly demanded that the FDIC' restore these funds to their deposit accounts. By letter dated November 1, 2002 to each plaintiff, FDIC-Receiver "disallowed" each plaintiff's claim to the extent it sought "status as the owner of a `deposit liability'" for the debited funds. Each plaintiff was simultaneously informed that it must file suit within 60 days of the date of this notice or the determination would be final. 12 U.S.C. § 1821(d)(6).

**Uncompleted Transfer Transactions**

28.     During the course of the business days on June 25 and 26, 2002, three plaintiffs, Dairland S.A. (Europa) ("Dairland"), Felker S.A. ("`Felker") and Venton Management Corp. ("Venton") each gave instructions (orders) to CBC in the ordinary course to transfer funds from plaintiffs' accounts into others' accounts at CBC or another bank. These transactions were never completed by CBC or FDIC-Receiver.

29.     Dairland ordered two transfers (one for $200,000, and the other for $75,000) from Dairland's account to two other CBC accounts which were specifically identified in the oral and written instructions Dairland delivered to CBC on June 26 [th] by telephone and facsimile, respectively.

30.     Felker also ordered two transfers (one for $320,000, and the other for $120,000) from its account to two other CBC accounts which were specifically identified in the oral and written instructions Felker delivered to CBC on June 26 th by telephone and facsimile, respectively.

31.     Venton ordered the wire transfer from its account of $1,470,000 to HSBC Bank in New York for the benefit of an account at that bank which was specifically identified in the oral and written instructions Venton delivered to CBC on June 25 th by telephone and facsimile, respectively.

32.     These instructions were each delivered by the depositor and accepted by CBC during the business days of June 25 or June 26 in the ordinary course of business using the means typically used by the depositor and the CBC during the course of their long-standing relationships.

33.     For reasons that have never been explained, neither CBC nor FDIC-Receiver completed any of these transactions.

34.     As a result of the failure to honor these transfer instructions before CBC ceased banking activities (other than the one-sided post-closing IBF sweep described above), Dairland's, Felker's and Venton's account balances were overstated by $275,000, $450,000 and $1,470,000, respectively. This increased by the same amounts the funds which were debited from their accounts in the IBF sweep conducted after the closing of the bank on the night of June 26th. The deposit amounts in the recipient CBC accounts (which were not IBF-authorized accounts) were understated as of the close of CBC by the same total amounts.

35.     Plaintiffs and the recipient accounts dully demanded that FDIC-Receiver complete the ordered transactions and adjust their deposit amounts and Receivership Certificates

(and those of the recipient accounts) accordingly. FDIC-Receiver disallowed Dairland's and

Venton's claims on November 12, 2002 and has taken no action to date on Felker's claim.

36.     The actions of the FDIC-Receiver and :FDIC-Corporate described in

paragraphs 1 through 35 with regard to each plaintiff's account violate governing law, including

the Federal Deposit Insurance Act as written and as interpreted by the Courts and defendant in

publicly available statements, and have caused substantial damage to plaintiffs.

**First Cause of Action**
**<u>Against FDIC-Receiver (All Plaintiffs</u>**

37.     Plaintiffs repeat and reallege the allegations of paragraphs 1 - 36 of this

complaint as if fully set forth herein.

38.     The balance in each plaintiff's account at the closing of the bank is the

deposit amount subject to the insurance and uninsured (excess) insurance provisions of the

Federal Deposit Insurance Act.

39.     FDIC-Receiver's denial of each plaintiff's claim for the full amount on

deposit at the time of the closing of the bank violates governing law, unlawfully deprives each

plaintiff of the protections of the Federal Deposit Insurance Act to which it is entitled, and is

arbitrary and capricious.

**Second Cause of Action**
**<u>Against FDIC-Receiver and FDIC-Corporate (All Plaintiffs)</u>**

40.     Plaintiffs repeat and reallege the allegations of paragraphs 1 - 39 of this

complaint as if fully set forth herein.

41.     The actions of the FDIC-Receiver and FDIC-Corporate constitute an

unlawful taking and appropriation of plaintiffs' property without just compensation in violation

of the Fifth Amendment to the Constitution of the United States.

## Third Cause of Action
### Against FDIC-Receiver and FDIC-Corporate (All Plaintiffs)

42.     Plaintiffs repeat and reallege the allegations of paragraphs 1 - 41 of this complaint as if fully set forth herein.

43.     FDIC-Receiver and FDIC-Corporate have unjustly and unfairly misappropriated and taken plaintiffs' property for their own use and benefit.

## Fourth Cause of Action
### Against FDIC-Receiver and FDIC-Corporate (All Plaintiffs)

44.     Plaintiffs repeat and reallege the allegations of paragraphs 1 - 43 of this complaint as if fully set forth herein.

45.     In effecting the post-closing IBF transaction overnight on June 26 and 27, 2002, including the transfer of funds from plaintiffs' accounts and the investment of those monies overnight, FDIC-Receiver acted as agent or trustee for the plaintiffs, and owed each plaintiff a fiduciary duty to act with regard to those funds in the plaintiff's (and not defendant's) best interests.

46.     By retaining the IBF funds, plus the interest earned overnight, for the benefit of FDIC-Receiver and FDIC-Corporate as a general asset of the receivership estate, and not crediting the funds back to each plaintiff, *pro rata,* the FDIC-Receiver and FDIC-Corporate, at whose direction and for whose benefit FDIC-Receiver acted, together violated their fiduciary duties to the plaintiffs.

## Fifth Cause of Action
### Against FDIC-Receiver (Plaintiffs Dairland, Felker and Venton)

47.     Plaintiffs Dairland, Felker and Venton repeat and reallege the allegations of paragraphs 1 - 46 of this complaint as if fully set forth herein.

48.     The failure of CBC and the FDIC-Receiver to honor Dairland's, Felker's and Venton's respective transfer instructions on June 25 and/or June 26, 2002 was negligent and arbitrary and capricious.

**Sixth Cause of Action**
**Against FDIC-Receiver (Plaintiffs Dairland, Felker and Venton)**

49.     Plaintiffs Dairland, Felker and Venton repeat and reallege the allegations of paragraphs 1 - 48 of this complaint as if fully set forth herein.

50.     The FDIC-Receiver's denial of (or failure to act upon) the claims submitted by Dairland, Felker and Venton regarding their uncompleted transfer instructions is arbitrary and capricious, is not based on substantial evidence, violates governing law and unlawfully deprives plaintiffs of the protections of the Federal. Deposit Insurance Act to which they are entitled.

WHEREFORE, plaintiffs demand that judgment be entered against defendant as follows:

   a)     Directing FDIC-Receiver to restore to deposit status all funds debited from each plaintiff's account after the close of the banking day on June 26, 2002 and transferred into the closed bank's IBF, and to deliver to each plaintiff for each account affected an amended Receivership Certificate in the appropriate amount;

   b)     Awarding each plaintiff and directing FDIC-Receiver and/or FDIC-Corporate to pay all required additional deposit insurance amounts and/or accrued distributions against uninsured (excess) deposit amounts for the restored deposit amounts, together with interest from the date the

payments would have been made originally but for the unauthorized debits on the night of June 26, 2002;

c)   Alternatively, awarding each plaintiff its *pro rata* share and directing FDIC-Receiver and/or FDIC-Corporate to pay over to the plaintiffs the entire amount of the IBF funds invested by FDIC-Receiver overnight on June 26 - 27, 2002, and received back (with interest) by the receivership estate before the commencement of the banking day on June 27, 2002;

d)   Directing FDIC-Receiver to effectuate the uncompleted transfers as instructed by Dairland, Felker and Venton before CBC was closed on June 26, 2002, and to adjust all accounts and deposit amounts, including insurance payments, accumulated distributions and Receivership Certificates for the plaintiffs' and the recipients' accounts, accordingly;

e)   Awarding plaintiffs the costs and disbursements of this action, including reasonable attorneys fees under any applicable statute, rule or regulation; and

f)   Ordering such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury of twelve on all issues.


Dated:  Washington, D.C.
        December 31, 2002

                                        Respectfully submitted,


                                        _Vanessa y. Chandler_
                                        Stephen S. Kaye (DC Bar No. 292532)
                                        Vanessa Y. Chandler (DC Bar No. 459137)
                                        BRYAN CAVE LLP
                                        700 Thirteenth Street N.W.
                                        Washington, D.C. 20005
                                        202/508 6000

                                        Attorneys for Plaintiffs

*Of Counsel*:

Miriam O. Hyman
Maria E. Martinez
BRYAN CAVE LLP
1290 Avenue of the Americas
New York, NY 10104
212/541 2000

Kathleen M. Kundar
Rafael A. Ginebra
FOX HORAN & CAMERINI LLP
825 Third Avenue
New York, NY 10022
212/480 4800

Marshall Beil
ROSS & HARDIES
65 East 55th Street
New York, NY 10022
212/418 0622