# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ADAGIO INVESTMENTS HOLDING LTD., | ) | |
| BADEN HOLDINGS LTD., | ) | |
| BELFAST LINK, S.A., | ) | |
| BRANDAN INVESTMENT S.A., | ) | |
| CHALONE LIMITED, | ) | |
| DAIRLAND S.A. (EUROPA), | ) | Case No. 1:02CV02550 (ESH) |
| DARTLEY BANK & TRUST LTD., | ) | |
| DARTLEY HOLDINGS INC., | ) | |
| DERABOIX S.A. (DIGITAL), | ) | |
| FELKER S.A., | ) | |
| INTERCONTINENTAL BANK (URUGUAY) SAFIE, | ) | |
| KIESSER INVESTMENT S.A., | ) | |
| MAXIMUS S.A., | ) | |
| MEGA SECURITIES LTD., | ) | |
| METROPOLIS CASA DE CAMBIOS, S.A., | ) | |
| NORPORT LTD., | ) | |
| OURINVEST CAPITAL INC., | ) | |
| RAINTREE LTD., | ) | |
| TAFLEX CORPORATION S.A., | ) | |
| TRANSPACIFIC S.A.,  and | ) | |
| VENTON MANAGEMENT CORP., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| -- against -- | ) | |
| | ) | |
| FEDERAL DEPOSIT INSURANCE CORPORATION, | ) | |
| in its corporate capacity and as receiver of | ) | |
| Connecticut Bank of Commerce, | ) | |
| | ) | |
| Defendant. | ) | |

## FIRST AMENDED COMPLAINT

Plaintiffs, by their attorneys, for their first amended complaint allege as follows:

1.      Plaintiffs were each depositors of Connecticut Bank of Commerce, a failed bank.  Defendant Federal Deposit Insurance Corporation in administering the receivership estate of the closed bank unlawfully depleted plaintiffs' deposit accounts of millions of dollars, thereby drastically reducing plaintiffs' likely recovery upon the liquidation of the bank.  These

actions, which benefited defendant at plaintiffs' expense, will effectively deprive plaintiffs of the protections of the Federal Deposit Insurance Act to which they are entitled.  They bring this action to recover the value of the deposits taken from them in violation of law.

### Jurisdiction and Venue

2.      This action arises under the Constitution and laws of the United States, including, without limitation, the Federal Deposit Insurance Act, as amended, 12 U.S.C. §§ 1811, *et seq*.  This Court has jurisdiction over the subject matter of this action pursuant to 12 U.S.C. §§ 1819(b)(2)(A), 1821(d)(6) and 1821(f)(4), and 28 U.S.C. § 1331.

3.      Venue is proper in this Court under 12 U.S.C. § 1821(d)(6) and 28 U.S.C. § 1391(e).

### The Parties

4.      Each plaintiff is incorporated or otherwise organized under the laws of a jurisdiction outside of the United States and conducts its business principally outside of the United States.  As more fully set forth below, each plaintiff was a depositor of Connecticut Bank of Commerce ("CBC").

5.      Defendant Federal Deposit Insurance Corporation ("FDIC") is the agency charged by law with, among other duties, administering the Federal Deposit Insurance Act and the federal bank deposit insurance system.  The FDIC is sued in its corporate capacity ("FDIC-Corporate") as the insurer of bank deposits and the supervisor of the receivership activities of the FDIC, and in its capacity as the Receiver of CBC ("FDIC-Receiver").

### Facts Common to All Claims

6.      CBC was a Connecticut-chartered, FDIC-insured bank with its home office in Stamford, CT and a branch in New York, NY.

**The CBC-IBF**

      7.     On and before June 26, 2002, each plaintiff maintained one or more FDIC-insured demand deposit accounts ("DDA") at CBC.

      8.     Each plaintiff had authorized CBC, after the close of CBC's banking day, to debit or "sweep" a portion of plaintiff's non-interest-bearing DDA into an uninsured, interest-bearing time deposit account within CBC's International Banking Facility ("the CBC-IBF").

      9.     The CBC-IBF was a service provided by CBC to its non-US-based customers and was not a separate legal entity.  Rather, the deposit accounts and loans in the CBC-IBF were denominated by segregated entries on CBC's general ledgers and books of account.

      10.     The CBC-IBF afforded CBC's non-US-based customers a cash management arrangement whereby non-interest-bearing DDA funds could be placed overnight in an interest-bearing time deposit account.

      11.     After the close of CBC's banking day an agreed-upon amount (the "Swept Funds") was debited from each plaintiff's FDIC-insured DDA and credited on the bank's books and records into an interest-bearing time deposit account in the CBC-IBF.  The CBC-IBF used the Swept Funds from plaintiffs and other depositors to lend (or invest) overnight in the short-term financial markets.  The overnight loans (or investments) plus the interest earned thereon were repaid to the CBC-IBF before the commencement of CBC's next banking day.  Also before the commencement of the next banking day, CBC credited the interest earned to the interest-bearing time deposit accounts of plaintiffs and the other CBC-IBF customers.  Each customer's Swept Funds, including interest, were then recredited on the CBC's books and records to the FDIC-insured DDA accounts of the customer.

**The Closing of CBC**

12.     On June 26, 2002, at the behest of the Connecticut Commissioner of Banking, the Connecticut Superior Court issued an order closing CBC and appointing the FDIC as receiver of CBC.

13.     At approximately 4:39 p.m. on June 26, 2002, the FDIC accepted the appointment, physically and legally assumed control over CBC's accounts, closed the bank thereby ceasing banking operations, and commenced the liquidation of the bank.

14.     The closing of CBC and the cessation of its banking activities perforce included the closing and cessation of the CBC-IBF.

15.     Plaintiffs' rights as FDIC-insured depositors, according to the defendant's publicly-stated policies, were fixed as of the moment of the CBC's closing.

**The Post-Closing, Partial Continuation of the CBC-IBF**

16.     Despite the closing of the bank, the FDIC in its post-closing administration of the CBC receivership estate took certain actions and failed to take others, as more fully described below, which deprived plaintiffs of the protections of the Federal Deposit Insurance Act, while providing substantial benefit to the FDIC itself.

17.     Late into the night of June 26, 2002, hours *after* the closing of CBC, FDIC-Receiver (acting, upon information and belief, at the direction or with the approval of FDIC-Corporate) initiated the sweep of approximately $22 million in funds from plaintiffs' and other bank customers' FDIC-insured DDAs and credited the $22 million to uninsured time deposit accounts in the CBC-IBF.

18.     Upon information and belief, the $22 million credited to the closed bank's CBC-IBF were invested by the FDIC in overnight loans or investments, which loans and

investments were repaid to FDIC-Receiver with interest before the start of the next business day.
Contrary to the ordinary operation of the CBC-IBF, however, the Swept Funds, with interest
added, were never returned or recredited to plaintiffs' DDAs.

19.     The Swept Funds instead were claimed by the FDIC and taken for its
benefit as a general asset of the CBC receivership estate.

**Plaintiffs' Claims**

20.     During the administration of the CBC receivership, each plaintiff duly
filed a proof of claim with FDIC-Receiver seeking recovery of the full amount of funds in each
plaintiff's DDAs at the time of CBC's closing.

21.     As determined by the FDIC, however, the final balance in each plaintiff's
DDAs upon the closing of the bank was not the amount on deposit at the moment of the
institution's closing but was reduced by the amount of the Swept Funds taken by the FDIC *after*
the closing of the bank as part of the post-closing, partial continuation of the CBC-IBF described
above.

22.     For the balance of the funds in each plaintiff's DDAs which had not been
swept out, post-closing, the FDIC determined that each plaintiff held an insured deposit, paid
each plaintiff up to $100,000 in deposit insurance and issued Receivership Certificates for the
uninsured amounts exceeding $100,000, the federal deposit insurance limit ("Excess Deposits").

23.     The FDIC disallowed each plaintiff's claim that the Swept Funds should
be part of the closing balance in each plaintiff's DDAs and classified as Excess Deposits.
Rather, FDIC relegated all Swept Funds taken post-closing to general creditor status.

24.     The effect of the FDIC's decision disallowing plaintiffs' claims and classifying the post-closing Swept Funds as general creditor claims rather than Excess Deposits will be to deprive plaintiffs of any recovery of the Swept Funds.

**Effect of Denial of Plaintiffs' Claims**

25.     Pursuant to the depositor preference provisions of the Federal Deposit Insurance Act, 12 U.S.C. § 1821(d)(11)(A), the highest priority for the application of funds realized upon the liquidation of a closed bank goes to the FDIC-Receiver for its administrative expenses.  Second priority for application of the funds is the satisfaction of the insured and uninsured depositors' claims.  General creditors have third priority status.

26.     In the administration of receivership estates after the enactment of the statutory priorities in 1993, while depositors have always recovered the insured amount ($100,000) and have often recovered a substantial percentage of their uninsured Excess Deposits, general creditors have usually received nothing.  The principal reason for this outcome is that, upon payment of the failed bank's insured deposit claims (up to $100,000 per account), FDIC-Corporate is subrogated to the claims of insured depositors against the failed bank's assets, making the FDIC in its dual capacities both the first and the largest second priority claimant against a failed bank's receivership estate.

27.     In the liquidation of receivership estates in recent years the FDIC has not recovered funds beyond those necessary to pay FDIC-Receiver's expenses, to pay a portion of Excess Deposits , and to reimburse FDIC-Corporate as the depositors' subrogee in the same proportion as the percentage of Excess Deposits paid to depositors.

28.     Upon information and belief, the outcome of the liquidation of the CBC receivership estate will be the same.  Depositors holding insured accounts (including plaintiffs to

the extent of the limited balances left in their DDAs after the post-closing sweep) will likely receive a substantial percentage of their Excess Deposits – FDIC-Receiver to date has distributed to CBC's insured depositors over 40% of the amount of their Excess Deposits– while general creditors (the plaintiffs here and others) will receive nothing at all.

29.     Thus, the post-closing Swept Funds, which were debited from plaintiffs' DDAs and credited to the failed bank's CBC-IBF, benefited the FDIC at plaintiffs' (and the other CBC-IBF customers') expense by providing the FDIC-Receiver with an additional $22 million to pay its administrative expenses, to distribute to CBC depositors for their Excess Deposits and to reimburse FDIC-Corporate as subrogee to the claims of insured depositors.

30.     Pursuant to 12 U.S.C. §§ 1821(d)(6) and 1821(f), plaintiffs may bring an action in this Court on their disallowed claims for the proper classification and payment of the amounts lawfully due them.  These amounts are as follows:

|     |                                |                |
| --- | ------------------------------ | -------------- |
| a.  | Adagio Investments Holding Ltd. | $ 200,000.00  |
| b.  | Baden Holdings Ltd.            | 550,000.00     |
| c.  | Belfast Link, S.A.             | 1,375,000.00   |
| d.  | Brandan Investment S.A.        | 300,000.00     |
| e.  | Chalone Limited                | 1,050,000.00   |
| f.  | Dairland S.A. (Europa)         | 800,000.00     |
| g.  | Dartley Bank & Trust Ltd.      | 825,000.00     |
| h.  | Dartley Holdings Inc.          | 1,050,000.00   |
| i.  | Deraboix S.A. (Digital)        | 250,000.00     |
| j.  | Felker S.A.                    | 1,075,000.00   |
| k.  | Gabanas Capital, Inc.          | 625,150.00     |

| l. | Intercontinental Bank (Uruguay) Safie | 500,000.00 |
|---|---|---|
| m. | Kiesser Investment S.A. | 1,800,000.00 |
| n. | Maximus S.A. | 1,150,000.00 |
| o. | Mega Securities Ltd. | 700,500.00 |
| p. | Metropolis Casa de Cambios, S.A. | 125,000.00 |
| q. | Norport Ltd. | 1,325,000.00 |
| r. | Ourinvest Capital Inc. | 300,000.00 |
| s. | Raintree Ltd. | 325,000.00 |
| t. | Taflex Corporation S.A. | 975,000.00 |
| u. | Transpacific S.A. | 200,000.00 |
| v. | Venton Management Corp. | 1,525,000.00 |

**Uncompleted Transfer Transactions**

31.     During the course of CBC's banking days on June 25 and 26, 2002, three plaintiffs, Dairland S.A. (Europa) ("Dairland"), Felker S.A. ("Felker") and Venton Management Corp. ("Venton"), each gave payment orders to CBC in the ordinary course to transfer funds from plaintiffs' accounts into accounts held by others at CBC or another bank. These transactions were never completed by CBC or FDIC-Receiver.

32.     Dairland ordered two transfers (one for $200,000 and the other for $75,000) from Dairland's account to two CBC accounts held by others, which were specifically identified in the oral and written instructions Dairland delivered to CBC on June 26th by telephone and facsimile.

33.     Felker ordered two transfers from its account (one for $320,000 and the other for $120,000) to two CBC accounts held by others, which were specifically identified in

the oral and written instructions Felker delivered to CBC on June 26th by telephone and facsimile.

      34.    Venton ordered the wire transfer from its account of $1,470,000 to HSBC Bank in New York for the benefit of an account at that bank which was specifically identified in the oral and written instructions Venton delivered to CBC on June 25th by telephone and facsimile.

      35.    These instructions were delivered by plaintiffs and accepted by CBC during the business days of June 25 or June 26 in the ordinary course of business using the means typically used by plaintiffs and CBC during the course of their long-standing relationships.

      36.    For reasons that have never been explained, neither CBC nor FDIC-Receiver completed any of these transactions.

      37.    As a result of the failure to honor these transfer instructions before CBC ceased banking activities (other than the post-closing CBC-IBF sweep described above), Dairland's, Felker's and Venton's account balances were overstated by $275,000, $450,000 and $1,470,000, respectively.  This increased by the same amounts the funds which were debited from their DDAs in CBC-IBF sweep initiated by FDIC-Receiver on the night of June 26th after the closing of the bank.  The deposit amounts in the intended recipients' CBC accounts (which were not IBF-authorized accounts) were understated as of the closing of CBC by the same amounts.

      38.    Plaintiffs and the intended recipients duly demanded that FDIC-Receiver complete the ordered transactions and adjust their deposit amounts and Receivership Certificates accordingly.  FDIC-Receiver disallowed Dairland's and Venton's claims on November 12, 2002

and has taken no action to date on Felker's claim.

## COUNT I
### By All Plaintiffs Against FDIC-Receiver and FDIC-Corporate

39.     Plaintiffs repeat and reallege the allegations in paragraphs 1 – 38 of this First Amended Complaint ("complaint").

40.     The total deposit liability of each plaintiff under the Federal Deposit Insurance Act was the amount in each plaintiff's respective DDAs at the moment of the institution's (CBC's) closing.

41.     The post-closing sweep of funds from each plaintiff's DDA accounts, the crediting of the Swept Funds to plaintiffs' accounts with the closed bank's CBC-IBF, the failure of FDIC-Receiver to recredit any of the Swept Funds to plaintiffs' DDAs and the FDIC's disallowance of plaintiffs' claims that the Swept Funds constituted Excess Deposits rather than general creditor claims, as more fully described above, violate the Federal Deposit Insurance Act and the FDIC's publicly stated interpretations of the Act, and unlawfully deprive plaintiffs of the protections that statute provides to depositors.

42.     Defendant's actions have caused and will continue to cause millions of dollars of damages to plaintiffs as more fully set forth above.

## COUNT II
### By All Plaintiffs Against FDIC-Receiver and FDIC-Corporate

43.     Plaintiffs repeat and reallege the allegations in paragraphs 1 – 42 of this complaint.

44.     Defendant's actions constitute an unlawful taking and appropriation of plaintiffs' property without just compensation in violation of the Fifth Amendment to the Constitution of the United States.

## COUNT III
### By All Plaintiffs Against FDIC-Receiver and FDIC-Corporate

45.     Plaintiffs repeat and reallege the allegations in paragraphs 1 – 44 of this complaint.

46.     Defendant has been unjustly enriched and benefited to the detriment of plaintiffs and at plaintiffs' expense.  In equity and good conscience defendant should return to plaintiffs the Swept Funds, plus interest, claimed by defendant and taken for its benefit.

## COUNT IV
### By All Plaintiffs Against FDIC-Receiver

47.     Plaintiffs repeat and reallege the allegations in paragraphs 1 – 46 of this complaint.

48.     FDIC-Receiver owed a fiduciary duty to plaintiffs to act in their best interests, not to waste or dissipate their funds and not to engage in self-dealing or other transactions for the benefit of the FDIC and not the plaintiffs.

49.     By engaging in the post-closing sweep of funds as described above, by failing to recredit the Swept Funds to plaintiffs and by retaining the Swept Funds as a general asset of the CBC receivership estate, FDIC-Receiver benefited itself and breached its fiduciary duty to plaintiffs and should be required to return such funds to plaintiffs with interest.

## COUNT V
### By All Plaintiffs Against FDIC-Receiver and FDIC- Corporate

50.     Plaintiffs repeat and reallege the allegations in paragraphs 1 – 49 of this complaint.

51.     Plaintiffs are entitled to the imposition of a constructive trust on the post-closing Swept Funds and to the return of all such sums to plaintiffs plus interest.

## COUNT VI
### By Plaintiffs Dairland, Felker and Venton Against FDIC-Receiver

52.     Plaintiffs Dairland, Felker and Venton repeat and reallege the allegations of paragraphs 1 – 51 of this complaint.

53.     The failure of CBC and the FDIC-Receiver to honor Dairland's, Felker's and Venton's respective transfer orders on June 25 and/or June 26, 2002, and to deny or fail to act upon their claims regarding such uncompleted transfer orders, as more fully described above, violate the laws governing the parties' banking relationship, including the applicable provisions of the Uniform Commercial Code, as well as the Federal Deposit Insurance Act and the FDIC's publicly stated interpretations of the Act, and unlawfully deprive plaintiffs the protections those laws provide to depositors.

## COUNT VII
### By Plaintiffs Dairland, Felker and Venton Against FDIC-Receiver

54.     Plaintiffs Dairland, Felker and Venton repeat and reallege the allegations in paragraphs 1 – 53 of this complaint.

55.     Defendant FDIC-Receiver has been unjustly enriched and benefited to the detriment of plaintiffs and at plaintiffs' expense.  In equity and good conscience defendant should complete the uncompleted transfers which were claimed by defendant and taken for its benefit.

WHEREFORE, plaintiffs demand that judgment be entered against defendant as follows:

a)      Directing FDIC-Receiver to restore to deposit status all funds debited from each plaintiff's DDA accounts and credited to the CBC-IBF after the close of CBC's banking day on June 26, 2002, and to deliver to each plaintiff for each account affected an amended Receivership Certificate in the

appropriate amount;

b) Awarding each plaintiff and directing FDIC-Receiver and/or FDIC-Corporate to pay to plaintiffs the full amount of all additional deposit insurance amounts and/or accrued distributions against Excess Deposits for the restored deposit amounts, together with interest from the date such payments or distributions would have been made to plaintiffs originally;

c) Alternatively, directing FDIC-Receiver and/or FDIC-Corporate to return to the plaintiffs the entire amount of the Swept Funds taken by the FDIC-Receiver after the closing of the bank on June 26, 2002, plus interest from June 26, 2002;

d) Alternatively, imposing a constructive trust on the post-closing Swept Funds and directing FDIC-Receiver and/or FDIC-Corporate to return all such funds to plaintiffs, plus interest from June 26, 2002;

e) Directing FDIC-Receiver to effectuate the uncompleted transfers as instructed by Dairland, Felker and Venton before CBC was closed on June 26, 2002, and to adjust all accounts and deposit amounts, issue new or amended Receivership Certificates for the plaintiffs' and the intended recipients' accounts, and to pay all additional deposit insurance amounts and/or accrued distributions against Excess Deposits, plus interest;

f) Awarding plaintiffs their costs and disbursements, including reasonable attorneys' fees under applicable statutes, rules or regulations; and

g) Ordering such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury of twelve on all issues.

Dated:      Washington, D.C.
            March 10, 2003

                                        Respectfully submitted,


                                        _____
                                        Stephen S. Kaye (DC Bar No. 292532)
                                        Jami L. Wyatt (DC Bar No. 473085)
                                        BRYAN CAVE LLP
                                        700 Thirteenth Street, N.W.
                                        Washington, DC  20005
                                        Phone:      202/508-6000
                                        Facsimile:  202/508-6200
                                        *Attorneys for Plaintiffs*

*Of Counsel*:
Miriam O. Hyman
Maria E. Martinez
BRYAN CAVE LLP
1290 Avenue of the Americas
New York, NY  10104
Phone:  212/541-2249
Facsimile:  212/541-1349

Kathleen M. Kundar
Rafael A. Ginebra
FOX HORAN & CAMERINI LLP
825 Third Avenue
New York, NY  10022
Phone:  212/480-4800
Facsimile:  212/269-2383

Marshall Beil
ROSS & HARDIES
65 East 55th Street
New York, NY  10022
Phone:  212/418-0622
Facsimile:  212/715-2319

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of March, 2003, a true copy of this First Amended

Complaint was delivered as follows:

Via Facsimile, U.S. Mail and Federal Express, to:

> John Davidovich, Esq.
> Federal Deposit Insurance Corporation
> 550 17th Street, N.W., Room H-11076m
> Washington, D.C.  20429

Via U.S. Mail and Federal Express to:

> U.S. Attorney General
> Department of Justice
> 950 Pennsylvania Avenue, NW
> Washington, D.C.  20530

> U.S. Attorney
> 555 Fourth Street
> Washington, D.C.  20001

_____
Jami L. Wyatt